Demyanovich v. Cadon Plating May it please the court, Paul Dillon appearing on behalf of the appellant Ellen Demyanovich. In your honors, I would appreciate reserving two minutes for rebuttal. Right. Your honor, in this case, the defendant, and by virtue of the granting of the motion for summary judgment down below, the Eastern District of Michigan has actually expanded the requirements necessary in order to establish a claim under the Family Medical Leave Act. Your honors, although there are a number of other facts that may be relevant and interesting, I do believe that the analysis of this issue really relies on some rather simple and established facts. And that is this. That Mr. Demyanovich, on February 23rd, had time available to him under the applicable no-fault attendance policy that was being utilized by the employer. He had somewhere between a half a day, a day and a half, maybe two and a half days. I indicated that there were some issues of miscalculation that I cited in my factual statement. But the fact of the matter is that he was not, at that time, in violation of the no-fault attendance policy. The evidence in the case was that on that day, he worked the entire day, left work at 3 o'clock and went to an after-work doctor's appointment, came back with his wife to the employer where he told Mr. Ensign, one of the appellants, my doctor says that my heart condition is going to require that I miss some additional time. It is uncontested, and I've quoted Mr. Ensign's language in my brief, that he said, if you take that time off, you will be fired. The fact of the matter is that this is not a really interesting case with respect to whether or not that is, in and of itself, FMLA interference. It is, and this Court has well recognized that in its CARES opinion and the Edgard opinion and the progeny of those cases. It's spelled out in the CFR that you cannot count family medical leave at time as a penalty when applying a no-fault attendance policy. So, in that respect, this is a very obvious case, and I think part of where things went a little amiss at the District Court was that the District Court found that Mr. Demjanovic had not established a prima facie case of FMLA interference. Of course, as this Court has noted before and in the CARES opinion, that a prima facie case is not an onerous burden, and Mr. Demjanovic had presented absolutely sufficient evidence to establish a prima facie case of FMLA interference as it relates to that. What gets a little interesting, I think, is that there's this issue about ability to return to work, and where does that fit into this entire analysis? Some courts have said, and I think the District Court down below said that whether someone can return to work is an issue of whether or not they're an eligible employee. The defense has argued that whether or not someone can return to work is whether or not they've suffered a harm under the Act. In other cases, they've even said that has to do with causation, whether or not the individual can return to work. So, this return to work issue has hit each of the five different elements of what a prima facie case is. So, what is your position in terms of the ability to return to work? Where should it factor in and what was shown on it? I actually don't believe that it's part of the prima facie case, Your Honor. I think that when an employer has an opportunity to request a certification, generally speaking, on those certifications, there is a projected return to work date. There was no request. There was no, all right, fill out the paperwork, Mr. Demjanovic, we'll see if you're going to be able to return to work. There was nothing. He was fired then and there. There was no, let's see what people are going to say, let's take a look at how it's been in the past. So, assuming that you've met the prima facie case, the employer then has to come up with a reason, is that right? And the reason is the no fault absence. They're stuck. They're stuck. Because that is the only reason that they have is why they fired him. And if it was going to be FMLA leave, that's not a valid excuse. They're stuck. So, aren't they asserting the honest belief rule that somehow that protects them? Yeah, I thought about this, Judge, and I was trying to, I wonder if I was actually going to lead with this point. Where does honest belief take us? How reasonable does an honest belief need to be? If I'm driving down the road and I say, I think that person is going to get out of the way and I won't hit him. Is that an honest belief? That the person is going to get out of the way? I might really believe it, but I still hit him. Or bring it to the employment context a little bit more, closer to this issue. Let's say someone is experiencing subpar performance on the job.  But the employer has the honest belief that they are performing poorly and that's why we fired them. That doesn't validate or overcome the fact that they were in that situation because they were being discriminated against. So, my point is the honest belief rule has to be tempered in this situation, if it applies at all. Which, by the way, it never has been applied to this projection. If I could back up. All of the cases that have been cited, all of them, all began with the employee beginning their FMLA leave. Most of the cases actually got to the end of the FMLA protected period when the employee wasn't able to comply with the employer's requirements about getting released, coming off of medication, there might sometimes have been a confusion about when the paperwork was due and when they were supposed to report back. But in all of these cases, there was at least a trial period of the FMLA protected period where the person actually went off for a while and then there were doctors who were treating and providing testimony. The evidence that we have in this case that Mr. Demjanovic would have returned to work is his track record. Now, I'm not suggesting that Mr. Did the doctor tell him not to return to work? Pardon me? His doctor told him not to return to work. His doctor, that doctor had declared him completely incapacitated ten years earlier, Judge, and consistently returned him to work. Mr. Demjanovic had come to work in November, three months before he was terminated, and was violently ill, throwing up. And was taken to the hospital and was hospitalized. He was back to work in 30 days. He was back to work in 30 days. And working overtime, outside of the restrictions that were applicable to him. Getting sicker. Because he was being overworked. Because he wasn't listening to his doctor. Your Honor, his doctor, with all due respect, we are talking about one... Ultimately, on that same day, he applies for social security disability benefits, which he successfully obtains. It was actually a couple weeks later, Judge, that he applied. It was on the 23rd, but I could be wrong. The call-in was in March. The date of the application, I agree, was retroactive to that date, because that was the date he was first unemployed. Your Honor, what we're talking about, as far as the doctor's opinion, is one scribbled note, one line, in a medical record. This doctor was not deposed. This doctor did not review Mr. Demjanovic's health condition throughout the protected period and say, Oh, good news, I was right, he wasn't able to return to work. We are on a very slippery slope here. I fully support the idea that FMLA claimants be required to jump through the necessary hoops. As an employer, I know it's difficult to comply with the employee's requirements, as are required during FMLA. But we have never, not this court, not any court, has ever said, We can sit here the day before an FMLA period is going to begin and just, I don't think you're going to make it. I don't think you're going to be back in time. This projection, this anticipated not inability. Suppose hypothetically that somebody has a family member asking for FMLA leave for them because they are in a coma and the doctors say it's unlikely that this person is going to get out of a coma ever. Should the, under your view, should the employer then have to grant FMLA leave and wait for, I assume it's the 12-week period, to go by? I think that if that information was established, maybe they wouldn't. But I'd also suggest to you, would it be that big of a problem if they were? Because what your client was asking for was unpaid FMLA leave, is that right? Exactly. So basically it's asking to keep the job open for the 12-week period? Exactly. And it's a menial job, one that easily, I mean, we're not talking about a key position here at all. You know, the fact that they've done without him for 30 days has been established. I mean, they use other people to do the sorting and the menial labor. The law, the FMLA was created for people like Mr. Demjanovic. He was clearly, without a doubt, right from the words of the supervisor, fired because he needed to take more leave. This is what the FMLA leave is about. But you concede that some element of the case here is that he has to have the physical ability to go back to work, right? Yes. I mean, whether it's a prima facie case or whether it's rebutting the, wherever it fits in. And you're saying there's an issue of fact as to that? Absolutely, Judge. Thank you. It is troubling to me that, you know, all we have are doctor's records, which are basically hearsay. But evidently both sides are using these medical records, even though they're not under oath. And the critical fact is what the doctor thinks, and then we've got to figure it out, although he's never been asked questions about it. We do know that Mr. Demjanovic was looking for a job. We do know that Mr. Demjanovic, according to that hearsay document, told his doctor, I've got to work. I've got a family to support. We do not have, you know, when the supposed admissions by Mr. Demjanovic, where he supposedly said, oh, I can't do this anymore. All he said was, I need a less stressful job. And this is like a year, year and a half after, during his deposition, saying, I just wanted to come back to a less stressful job. Not that I couldn't do the job. I mean, Mr. Ensign clearly told me. Was he asked that direct question? Now, at the date that the leave would have expired, in your view, were you physically able to go back to that job? Was he asked that? I don't think he was asked that clearly. Is that the standard? Is that what we're? I don't think so. What is the standard, then? I think that would have had some evidentiary value. I think it's a question of fact of whether or not the employee would have been able to return during the protected period. I can't see how that possibly could be. Return to his former job as opposed to any job? Or what are we looking at here? Right. No, are we looking at his former job? Any job. Any job? It would be any job because that's what the FMLA requires, is that he be placed in a similar position. The accommodation. Okay. Is the accommodation part of the ADA claim or part of the FMLA claim? The accommodation, I believe, Your Honor, is more part of the ADA claim than it is the FMLA claim. Except that I think they're inextricably bound because whether or not he could have returned to the work would have required them to follow the ADA and accommodate him to give him the proper schedule. So they're interrelated. I think so. I see your red light is on. I noticed that myself. Thank you. Thank you. The bottom line here is you just say that either side's entitled to summary judgment, that there's issues of fact here and it would need to be weeded out further. I do. Good morning, Your Honors. My name is Patrice Arend, and I represent the appellees in this matter, Kedon Plating and Coding, LLC, and Al Ensign. The case before this court this morning involves an individual who is physically incapacitated and was unable to work or engage in any activity, including work, seeking to invoke the protections of both the Family Medical Leave Act, the Americans with Disabilities Act, and the Michigan State law equivalent to the ADA for protection. And those statutes were not designed to protect individuals who are not able to work. And that's exactly the situation that we have. I thought the FMLA is designed to give you time to deal with a medical issue and then let you come back if there's a 12-week period generally. So why wouldn't this be ideally suited for someone who has a heart problem, who needs to recover hypothetically from a heart attack or something like that? They're unable to work then, but 12 weeks later they hope to be fit and back to work. If the medical condition itself allows that individual to return to work within the 12-week FMLA granted period, then the FMLA would provide them protection. When do you test whether somebody can come back to work? Do you test it when they ask for the FMLA leave, when they're in the throes of their serious illness, or do you wait until the 12 weeks are up or however many days he had under his unique conditions for the FMLA? Well, I submit that you would look at the time that the request was made. But irrespective, the analysis really comes into play when you look at whether a plaintiff can establish a prima facie case. And in this particular case, the trial court found that because he couldn't return to work in that examination, the cases that we have cited in our brief say that you don't look at when the request was made. You actually, at the time you're doing the analysis, you've taken all of the medical information that was available to make the determination of whether that individual was able to return to work after the 12-week leave time. But the employer denied FMLA leave here right away in February when the request for FMLA leave was made. So how does the employer know at that time that this person is not going to be able to return to work? I don't even know that I agree with my hypo, but in my hypo, the person's in a coma and all the doctors in the world say this person's never going to recover. Obviously, that's a bit of an extreme hypo, but this guy's been repeatedly coming back to work even though he's had congestive heart failure for 10 years and cardiomyopathy or whatever it is for a long time. Well, the decision that was made in this particular case by KADON not to allow the FMLA leave had nothing to do with its analysis of whether the individual could return to work after 12 weeks. In fact, what the employer said at the time that Mr. Demyanovic had requested leave, they said you're not eligible for FMLA leave because we don't have the requisite number of employees. And so the question in this case isn't the judgment of the employer with respect to the ability to return to work after 12 weeks. That issue is an analysis that is triggered once you look at whether the plaintiff can establish a prima facie case. Well, if the employer's wrong on that and there are over 50 employees, then we look at the other reasons. I mean, the other reasons are what? Attendance was the other reason his employment was terminated. So your opponent says with regards to attendance that there's at least a genuine issue of material fact as to whether he was in compliance with the attendance at the moment that he requests FMLA leave. And your opponent says that FMLA leave cannot count against attendance. So why doesn't that preclude summary judgment on your behalf? Because the issue that was raised by the plaintiff and as the district court determined is that really what he is trying to do is nitpick at the way that the employer had kept the attendance records. The employer had an honest belief at the time that they made a calculation of the number of attendance points that he didn't have any attendance points left. And, in fact, the two points that was added by the employer for the good attendance was done after seven weeks, which was more than what the policy allowed. It said you got three points after eight weeks of perfect attendance. And that type of mathematical mistake is not sufficient to rise to what the courts have determined is not an honest belief. It wasn't so obvious that you can make an inference that they were taking that action as a way to intentionally interfere with his ability to take the FMLA leave. The plaintiff's testimony to the statement was made, if you take the time off, you will be fired. Doesn't that go against the honest belief argument that you're advancing? And the reason they made the statement, if you take the time off, you're going to lose your job is because you don't have any attendance points left. It's in regard to the attendance. It's with respect to his attendance. As opposed to exercising your rights under FMLA? No, it had nothing to do with exercising the rights under the FMLA. That statement is an argument by counsel that is not reflected in the record. The record is clear that the conversation was, and the plaintiff concedes, he was specifically told on February 23rd that FMLA doesn't apply to you because we don't have the requisite number of employees. And second, because of your attendance, since you're not entitled to FMLA leave, if you take that additional time off, you will be in violation of the attendance policy and we will have to let you go. And in fact, the decision, contrary to the appellant's argument today, was not made on the 23rd. The record is replete that when Mr. Dvianovic did not return to work on the 24th, that's when the decision was made and the termination letter was sent. If we are subject to FMLA, that there are 50 employees if you combine the various companies, then the attendance policy can't trump the rights under FMLA to take the leave, can it? That's right. Okay. So there would be a violation here. Okay. You know, the case seems to rise and fall on the doctor here, and the doctor's notes, to me, advise him not to return to work, but they don't categorically say he's physically incapable of going back. Why didn't you take the doctor's deposition since that's what the case is all about? I mean, why do you rely totally on these scribbled notes that we've got to go through? Your Honor, I will disagree that we totally rely on Dr. Musani's notes. Dr. Musani did say when the plaintiff went to see him on the 23rd, look, you really need to file for disability. But our argument that the plaintiff was unable to return to work in 12 weeks, in addition to the fact he wasn't a qualified individual, relies on more than just Dr. Musani's handwritten notes. It relies on the fact that in support of, first of all, in support of the plaintiff's claim for Social Security disability benefits, he himself said that he was unable to work. That's not conclusive, right? Yes, it is. It is conclusive. That bars his claim here, the fact that he filed? Well, factual admissions are conclusive on him. Right. But the fact that he filed for Social Security disability itself, and even if he was granted it, is not conclusive as this case, right? That's correct, and that was the holding in Cleveland. But the cases that we cite, this isn't just plaintiff filing a claim and saying I want Social Security benefits. Why didn't you take the doctor's deposition? This is a summary judgment motion. You have the burden on it to establish it, to establish there are no genuine issues of material fact. It seems like it would be very easy for you to have taken the doctor's deposition, asked the questions. Why didn't you do it? Because, Your Honor, I don't think it was necessary in this case. If you look at the plaintiff's own admission, both when he filed for Social Security benefits, he made specific overt statements that I am unable to work, I am unable to hold a job. If I was offered a job, I wouldn't take it. I don't have the ability to walk or stand or rake or do all of which were essential functions of the job as a machine operator. He's working in a manufacturer facility. In addition to the fact that in his deposition he was specifically asked questions about his medical condition, and in his deposition he made admissions that he didn't have, he had physical limitations, that he couldn't walk. He didn't have physical stamina. When did these admissions pertain to? In other words, there's a plaintiff's deposition at a particular date. Is he saying his abilities at the time that he requested FMLA leave, or his abilities at the time that FMLA leave would have expired, or his abilities at some other time? Both, because the questions related to his condition at the time the deposition was taken, but he was also asked how his condition had changed. He said, my condition is the same as it was there and is continually to get worse, and in fact had gotten worse after. Those are two different things, to say the condition is the same and the condition continued to get worse. Those are different things. I asked about his limitations, and he said the same. Then I asked how it changed, how his condition was changing, and the condition was getting worse. In other words, the limitations were the same, albeit the symptoms may have been more aggravated. That existed at the time that he was taken. In addition, if you look at the statements that he's making to the Social Security Administration, literally within that 12-week window after he has, assuming if you look at the 12-week window after February 23rd, in that period of time he's telling the doctor that is taking his examination, I can't work. If I were offered a job, I wouldn't take it, and I can't walk and I can't stand. When he was specifically asked in his deposition, he said he was looking for other work, and that colloquy is included in the opinion from the district court. When he was specifically asked after February 23rd, he started looking for jobs. He started looking for jobs that were different from what he was doing at KDON and had different levels of physical exertion and different levels of stress because he wasn't able to maintain that at KDON. This sort of gets us into the potential intersection between the ADA and the FMLA here. Under the ADA, he could ask for reasonable accommodation for his physical limitations, right? He could. So why wouldn't that be factored in, in terms of whether he can return to work under the FMLA? Because as the district court found, there was no reasonable accommodation that was requested by the plaintiff and none that were put forth in response to the motion for summary judgment. The plaintiff opines that he could have been given a job on a different line. He could have caught parts at the end of the line. He says that these are less stressful. But in order to establish that movement to another job would be a reasonable accommodation, he has to establish, number one, that those positions were available. And there's no evidence in the record, and it's the plaintiff's burden to prove, that those positions are available. And he didn't satisfy that burden of proof. And second, he has to establish that he's able to do those jobs. And because moving from paint line one to, say, paint line three or paint line three to the end of a phosphate line, the job description for operating heavy machinery in a manufacturing facility is exactly the same, no matter what line you're on. If he's not able to physically do the job on one line, he's not physically able to do the job on the other line. But the district court relied on the fact that plaintiff didn't satisfy his burden of showing, number one, what jobs were available, and number two, there's no evidence in the record that he was qualified for them. I recall he told Social Security that he couldn't do any work. That's right. That's right, and so if he's not able to do any work, he's not able to do any of those other hypothetical jobs that he had posed in response to the summary judgment motion. And finally, I just want to address briefly the plaintiff's argument that he had a track record for returning to work. There is no evidence in the record by the plaintiff, and the plaintiff could have submitted an affidavit, there's no evidence on the record that the plaintiff was able to return to work or would return to work. There's nothing in his deposition, there's no affidavit, there is nothing. The only evidence that they rely on for him to return to work is that historically he returned to work and that Ensign had made the comment he was doing his job correctly. But if you look at that, only that two evidence in light of the overwhelming statements that were made, not only to the Social Security, the statement of the doctor, the statements and admissions that he made in his deposition, those two statements are not enough to create a genuine issue of material fact on the issues that are before this court. And for that reason, we ask that this court affirm the District Court's decision below. Thank you. As to whether Mr. Demjanovic was physically incapacitated, he may have become in that condition a year and a half, sometime later, I don't know and I'm not, that's not an issue. What about his statements to Social Security? Your opponent is saying that those are within the FMLA period. I don't even know that my client made any statements. He made an application. Did he file an application and make statements in the application and what did he say? He actually checked the box that said that is for a temporary disability, Your Honor. That's the code of that sheet on that application and that is the only statement that's made that could be attributed to him as far as the extent of his disability. He didn't make a statement to the Social Security? No, he was interviewed by a psychologist about a year and a half after the termination who said that he was depressed and the depression was what was keeping him from being able to work and the depression was because he had lost his job. That's what the report said. He's awarded Social Security benefits, isn't he? He is. What's the basis of the award if it's not his testimony? It's Dr. Bray's testimony. It was the psychologist who did the review. And he has a heart condition. I mean, he does. Okay. Without any testimony from your client? That's correct. Were there any written statements of any kind? None. So it appears that the two of you have rather different views of what the facts are. I'll look at the record, but the fact that the two of you are totally disagreeing on whether he testified to the Social Security Administration is somewhat troubling to me. It is. And I would point out- Because his statements, I mean, he is bound by those statements. And he cannot- Those are- Right. In this proceeding, he- It's the distinction. But if he didn't make them- He didn't make them. And Judge- We'll find out one way or the other. With respect to the testimony of good faith and whether or not there was a good faith belief as to whether or not there were points left, the testimony was extremely clear by Mr. Ensign. I had asked Mr. Ensign about the 23rd. He says, I know I talked to him on his last day. Which was when? The 23rd. Question, what do you recall about that conversation? Answer, I know he came to me and he was already at one and a half points. So even at the time of his deposition, sometime after the termination, he's still admitting that he believed that Mr. Demjanovic had a point and a half. Your red light is on. Thank you very much. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Can I ask one question? Yes. Do you have a citation to the Social Security testimony or statement that you refer to? It's page 478 of the record. Just one page of the record? Well, it's page 478 and 479. Is his testimony? That's the admissions that he made to the examining doctor for Social Security on May 14, 2010, which was during the 12-week period. Okay. All right. Thank you. Thank you both. The case will be submitted. Would the clerk call the next case, please?